*E-Filed 04/19/2010*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELIAZAR GONZALEZ, et al., | No. C 10-00805 RS |
| Plaintiffs, | **ORDER DENYING PRELIMINARY INJUNCTION** |
| v. | |
| ALLIANCE BANCORP, et al., | |
| Defendants. | |

I.   INTRODUCTION

Aliazar and Silvia Gonzalez filed their Complaint on February 25, 2010 alleging violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq.*, as well as various other violations of California statutory and common law. On March 30, 2010, the Gonzalez family filed an emergency motion for a temporary restraining order ("TRO") enjoining defendants Alliance Bancorp ("Alliance"), IndyMac Bank, Onewest Bank ("Onewest"), Mortgage Electronic Registration Systems, Inc. ("MERS"), and Regional Service Corporation ("Regional") from proceeding with a foreclosure sale of plaintiffs' property. Plaintiffs represented that the foreclosure sale was scheduled to take place on April 1, 2010 at 11:00 a.m. This Court issued the TRO along with an order to show

cause why a preliminary injunction should not be granted. That motion came on for hearing on April 14, 2010.

Defendants contend that, owing to expired statutes of limitations on plaintiffs' federal claims and federal preemption of those sounding in state law, plaintiffs cannot show the requisite likelihood of success on the merits for preliminary injunctive relief. Beyond these procedural hurdles, defendants insist and persuasively demonstrate that plaintiffs have not alleged factually or legally viable claims. Foreclosure of the Gonzalez family home is imminent and there is no question that such a loss constitutes irreparable harm. Where plaintiffs fail to present claims with legal merit, however, they cannot satisfy the requisite showing for the extraordinary remedy of preliminary injunctive relief. Plaintiffs' motion for a preliminary injunction therefore must be denied.

## II.     FACTS

The Gonzalez family explains that in 2003, they purchased the home and the land on which it sits that are at the heart of this dispute. The property is located at 132/134 North 14th Street in San Jose, California. On January 11, 2007, plaintiffs signed a loan agreement with Alliance. A Deed of Trust secured the loan. Plaintiffs aver that they are native Spanish speakers and, while all oral negotiations were conducted in Spanish, they contend they were not offered Spanish translations of any document.

Structurally, the loan had a negative amortization option and incorporated a fluctuating interest rate. Initially, that rate was 8.75% but rose less than sixty days after the loan closed. The plaintiffs insist they did not understand the nature of a fluctuating loan and were not prepared when it—and their monthly financial obligation—steadily rose. They explain that they originally borrowed $521, 250, currently owe $578,000, with a present value of their home of roughly $381,677.

In June of 2009, while in the midst of financial difficulties, plaintiffs explain that they were unable to make their monthly mortgage payments. On October 7, 2009, they received a notice of default and, on January 7, 2010, a notice of sale scheduled for February 29, 2010. On February 28, they filed for Chapter 13 bankruptcy protection in the United States Bankruptcy Court in the

Northern District of California. They claim they have since "emerged" from the bankruptcy proceeding and have only unsuccessfully sought loan modification from Onewest. Onewest counters that plaintiffs did not in fact "emerge" from bankruptcy; rather, their claim was dismissed on March 2, 2010 for failure to file a Chapter 13 repayment schedule.

Only Onewest and MERS filed opposition papers to plaintiffs' request for injunctive relief. Reliance filed a declaration. Apparently, Alliance transferred the loan to IndyMac Bank, who then transferred the loan onto Onewest. Onewest is a federally chartered bank. MERS is a Deleware corporation that served, it seems, as the nominee or mortgagee of record on the Deed of Trust.

### III. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. N.R.D.C., Inc.*, 129 S. Ct. 365, 374 (2008). Injunctive relief is an "extraordinary remedy" and may only be awarded in response to a firm demonstration that the plaintiff is entitled to such relief. *Id.* at 376 (citation omitted).

The Supreme Court in *Winter* rejected the Ninth Circuit's "sliding scale" approach to the preliminary injunction standard. The Circuit had previously reasoned that a preliminary injunction inquiry required a court to balance plaintiff's likelihood of success on the merits against the relative hardship to the parties. The Circuit saw the balance as a "continuum," where "the required showing of irreparable harm varies inversely with the probability of success." *LGS Architects, Inc. v. Concordia Homes*, 424 F.3d 1150, 1155 (9th Cir. 2005). In *Winter*, the Court flatly rejected at least one half of the conceptual continuum: it insisted a plaintiff must *always* show a strong likelihood of irreparable harm.

Plaintiffs argue *Winter* did not actually condemn the continuum's "second" conceptual possibility: injunctive relief is appropriate where a plaintiff has demonstrated imminent, irreparable harm and, if not a likelihood of success, at least that "serious" questions go to the merits. *See, e.g., Save Strawberry Canyon v. Dep't of Energy*, 613 F. Supp. 2d 1177, 1180 n.2 (N.D. Cal. 2009). In

*American Trucking Association v. City of Los Angeles*, the Ninth Circuit acknowledged that the Supreme Court in *Winter* rejected the Circuit's preliminary injunction standard as "too lenient." 559 F.3d 1046, 1052 (9th Cir. 2009). The Circuit then recited *Winter*'s standard and insisted that, "[t]o the extent that our cases have suggested a lesser standard, they are no longer controlling, or even viable." *Id.*

As confirmed by the Ninth Circuit in *American Trucking*, defendants correctly contend that the standard for preliminary injunctive relief is that articulated in *Winter*. This standard speaks only of a "likelihood" of success on the merits. Even assuming the "serious question" approach is still viable, however, it is apparent from the parties' papers and loan documents that plaintiffs have not actually shown that serious questions go to the merits. "Serious," at any rate, denotes a more fulsome showing than a "negligible" chance of success. *Cf. Nken v. Holder*, 129 U.S. 1749, 1776 (2009) (insisting, in context of judicial stay—where standard and the purposes behind it substantially overlap with standard for preliminary injunction—plaintiff necessarily must show *more* than a negligible probability of success). Plaintiffs have not met this burden.

## IV.   ANALYSIS

### A.   TILA Claim

Plaintiffs contend they are entitled to rescind their mortgage under TILA, 15 U.S.C. § 1635(f). They do not seek statutory damages pursuant to section 1640. Plaintiffs argue the original lender (Alliance) failed to provide two copies of a form explaining a mortgagee's right to rescind as required by an accompanying federal regulation. *See* 12 C.F.R. § 226.23(b)-(c). Section 1635(f) imposes a three year time limit for rescission where a disclosure violation takes place.[1]

Defendants argue plaintiffs' TILA claims are time-barred. The Gonzalez family entered into the loan on January 11, 2007 and filed their Complaint on February 25, 2010. They aver in the Complaint that, at the time of filing, they had exercised their right to rescind by "providing written notice of cancellation to Defendants." Neither plaintiffs nor defendants included a copy of this

---

[1] The availability of statutory damages under the Act is limited to claims brought within one-year from the date of the violation. 15 U.S.C. § 1640(e).

cancellation or mentioned the date on which it was sent in the papers. At oral argument, plaintiffs did not deny that they exercised their rescission right under TILA outside the statutory period.

Plaintiffs argue, however, that the limitations period should be equitably tolled. As to TILA's rescission remedy, the Ninth Circuit has observed that "Congress placed a three year absolute limit on rescission actions, demonstrating its willingness to put a limit on the scope of some types of TILA actions." *King v. California*, 784 F.2d 910, 914 (9th Cir. 1986). "At least in the rescission context," the Circuit reasoned, "Congress did not intend to prolong the limitations period under a 'continuing violation' theory." *Id.* Rescission is not a remedy available here and, accordingly, plaintiffs cannot show a likelihood of success on the merits.[2]

### B. RESPA Claims

Plaintiffs' fourth claim for relief alleges a violation of 12 U.S.C. sections 2605(e) and 2607(c). Both of those particular statutory sections outline the remedies available to a private citizen. Section 2605 provides that individuals damaged by a RESPA violation are entitled to receive actual damages, as well as any additional damages the court may allow "in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1)(A) & (B). Under sections 2605 and 2607, prevailing

---

[2] Defendants also argue plaintiffs cannot show a likelihood of success on the merits because they have not alleged the present ability to tender as required under 15 U.S.C. § 1635(b) (requiring tender within twenty days of notice of rescission). In *Yamamoto v. Bank of New York*, the Ninth Circuit explained that a district court may alter the rescission procedures described in TILA and retains "discretion to condition rescission on tender by the borrower of the property he had received from the lender." 329 F.3d 1167, 1171 (9th Cir. 2003) (internal quotation marks and citation omitted). Whether rescission should be so conditioned "depends upon the equities present in a particular case, as well as consideration of the legislative policy of full disclosure that underlies the Truth in Lending Act and the remedial-penal nature of the private enforcement provisions of the Act." *Id.* (internal quotation marks and citation omitted). This Court has reasoned, for example, that a plaintiff need not demonstrate the present ability to tender in the pleadings to survive a motion to dismiss for failure to state a claim. *Botelho v. U.S. Bank*, No. 08-04316, 2010 WL 583954, at *5 (N.D. Cal. Feb. 16, 2010). A party who moves for preliminary injunctive relief carries a heavier burden and must satisfy a more rigorous inquiry. While it is uncertain whether a showing of ability to tender would be necessary to demonstrate a likelihood of success on the merits, the Court does not reach the question as, even assuming plaintiffs had satisfied the tender issue, their TILA claims are time-barred. Similarly, the Court does not decide whether plaintiffs' absence of any showing of ability to tender would bar rescission under California Civil Code section 1916.7. As explained below, this statutory claim is preempted by federal law, in any event.

plaintiffs may recover attorney's fees and costs.  12 U.S.C. §§ 2605(f)(3) & 2607(d)(5).  None of these remedies, however, would permit a permanent injunction against foreclosure.

The standard for a preliminary injunction is functionally the same standard as for a permanent injunction, with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success.  It generally follows, therefore, a party may not obtain *preliminary* injunctive relief where he or she could not obtain *permanent* injunctive relief.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987).  Numerous district courts have denied preliminary injunctions to RESPA plaintiffs on this basis.  *See, e.g.*, *Chung v. NBGI, Inc.*, No. 09-04878, 2010 WL 841297 at *3 (N.D. Cal. Mar. 10, 2010); *Montes v. Quality Loan Service Corp.*, No. 09-5864, 2010 WL 114485, at *2 (C.D. Cal. Jan. 5, 2010); *Pettie v. Saxon Mtg. Servs.*, No. 08-5089, 2009 WL 1325947, at *3 (W.D. Wash. May 12, 2009).  Even if plaintiffs had included facts in support of their improper kickback theory (which they have not), the proper remedy might include statutory damages, fees and costs.  These RESPA claims could not halt foreclosure.  Accordingly, the Gonzalez' request for preliminary injunctive relief is simply not viable.

C. <u>Negligence Per Se: California Civil Code § 2923.5</u>

Plaintiffs also advance a theory of negligence per se.  To do so, they rely on California Civil Code section 2923.5 and argue Onewest (who stands in the shoes of the original lender) failed to comply with the foreclosure avoidance requirements therein.  Specifically, section 2923.5 requires that, before a mortgagee, trustee, beneficiary, or authorized agent may file a notice of default, it must make contact with the borrower.  In the ensuing thirty days, it must comply with several further "due diligence" and communication requirements.  Notably, the lender must "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure."  Cal. Civ. Code § 2923.5(a).  The notice of default must include a declaration by the mortgagee, beneficiary, or authorized agent that the borrower has been contacted as required under the section.  Cal. Civ. Code § 2923.5(b).  Plaintiffs contend that, while they repeatedly tried to contact Onewest, neither Onewest nor any other defendant made the required communications.  This, they contend, demonstrates defendants' statutory negligence.

Onewest argues, first, that it did comply with all obligations contemplated under section 2923.5 and, in support, submits a copy of the requisite declaration it contends was properly sent to plaintiffs. It also insists one of its agents did indeed contact plaintiffs by telephone and certified mail and points to a corporate activity log that documents the communication.

Even assuming there was a failure to adhere to the section, however, defendants present a compelling argument that plaintiffs' section 2923.5 claim is preempted by federal law, at least insofar as it is directed at the alleged failings of lender Onewest. Onewest is a federally chartered bank. Pursuant to the Supremacy Clause of Article VI, clause 2, of the United States Constitution, federal law preempts state law "when federal regulation in a particular field is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002). In the banking field, Congress has created "an extensive federal statutory and regulatory scheme." *Id.* As part of this scheme, Congress enacted the Home Owners Loan Act ("HOLA") and delegated authority to implement it to the Office of Thrift Supervision ("OTS"). The relevant regulation is 12 C.F.R. § 560.2, which states that OTS "completely occupies the field of lending regulation for federal savings associations." The Ninth Circuit has characterized HOLA and its accompanying agency regulations as a "radical and comprehensive response to the inadequacies of the existing state system, and so pervasive as to leave no room for state regulatory control." *Silvas v. E*Trade Mortgage Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (internal quotation marks omitted).

When reviewing the preemptive effect of the OTS regulation on a state law that seeks to regulate a federal bank, the Ninth Circuit has supplied district courts with the following instructions:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b) [of 12 C.F.R. § 560.2]. If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. Any doubt should be resolved in favor of preemption.

*Id.* at 1004.  Paragraph (b) includes a lengthy list of specific types of state regulations that are properly preempted:

> [S]tate laws purporting to impose requirements regarding . . . [d]isclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants. . . . [and those that impose requirements regarding] [p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.

12 C.F.R. § 560.2(b)(9)-(10).  Section 2923.5 requires that a federal bank contact a borrower prior to the notice of default and to submit a specific declaration with that notice assuring that "the mortgagee, beneficiary, or authorized agent . . . has contacted the borrower . . . or tried with due diligence to contact the borrower."  In *Murillo v. Lehman Brothers Bank*, a court in this district reasoned that the required declaration contemplated under section 2923.5 relate to the "processing and servicing" of a loan and therefore fall within the type of state regulation HOLA expressly preempts.  No. 09-00500, 2009 WL 2160578, at *6 (N.D. Cal. July 17, 2009).  *See also Odinma v. Aurora Loan Services*, No. 09-04674, 2010 WL 1199886, at *7-8 (N.D. Cal. Mar. 23, 2010) (reaching same result but noting that communication requirements also relate to loan "processing").  In light of the regulation's broad preemptive force against any state statute that seeks to regulate directly a federal bank's lending practices, defendants have made a compelling showing that section 2923.5 is preempted as to Onewest.  Plaintiffs therefore have not met their burden as to likelihood of success on the merits as to this claim for relief.

D.  <u>Right of Rescission Under California Civil Code §1916.7</u>

California Civil Code section 1916.7 governs certain lending practices with regard to adjustable-rate mortgages made pursuant to the section.  Subdivision (c) requires that a lender supply any loan applicant with specific disclosures that explain the nature and structure of a fluctuating interest rate.  Plaintiffs contend defendants failed to provide these disclosures and, as a result, they insist they are entitled to rescind the mortgage and dispose of their obligations therein.

Crucially, however, the disclosures required by section 1916.7(c) apply only to adjustable rate mortgages made pursuant to section 1916.7. Cal. Civ. Code § 1916.7(b). *See also Brittain v. IndyMac Bank*, No. C 09-2953, 2009 WL 2997394, at *2 (N.D. Cal. Sept. 16, 2009). Plaintiffs have not presented any evidence that their loan was subject to that section. Moreover, the Deed of Trust includes a Family Rider that extensively details the structure of the parties' agreed-upon arrangement and, for practical purposes, performs a similar function to the subsection (c) form disclosure.

### E.  Cal. Civ. Code § 1632

Plaintiffs contend Alliance violated the express provisions of California's Contract Translation Act ("CTA") when it failed to supply them with a Spanish translation of the contract terms. California Civil Code section 1632(b) provides:

> Any person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract. . . .

Cal. Civ. Code § 1632(b). Section 1632(b)(2) excludes loans secured by real property. The Gonzalez' mortgage agreement is such a loan. That said, section 1632(b)(4) contains an exception, which provides that the CTA applies to "a loan or extension of credit for use primarily for personal, family or household purposes where the loan or extension of credit is subject to the provision of Article 7 (commencing with Section 10240) of Chapter 3 of Part I of Division 4 of the Business and Professions Code . . . ." Article 7 of the California Business and Professions Code, in turn, applies to certain loans secured by real property that are negotiated by a real estate broker. Cal. Bus. & Prof. Code, § 10240. A "real estate broker" is defined as:

> [A] person who, for a compensation or in expectation of a compensation, regardless of the form or time of payment, does or negotiates to do one or more of the following acts for another or others: . . . (d) Solicits borrowers or lenders for or negotiates loans or collects payments or performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property or on a business opportunity.

Cal. Bus. & Prof.Code § 10131.

In their Complaint, plaintiffs describe Alliance as a "mortgage lender," who acted as "the initial lender on the loan at issue." Plaintiffs have not presented any evidence that Alliance was a broker within the meaning of the California Business and Professions Code. In contrast, the Complaint consistently describes Alliance as a lender, consistent with the characterization in the Deed of Trust. Accordingly, plaintiffs have not shown that the CTA applies.

F.  Unfair Business Practices, California Business & Professions Code § 17200

Finally, plaintiffs allege that all defendants engaged in unfair or unlawful business practices in violation of California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200 (prohibiting "unlawful, unfair or fraudulent" business practices). They argue broadly that defendants' acts constitute unfair or unlawful business practices "within the meaning" of the Code but do not actually differentiate between defendants or pin their allegations to a particular prong of the UCL's prohibition against "unfair, unlawful or fraudulent" business practices.

The UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). The violation of almost any federal, state, or local law may serve as the basis for a UCL claim. *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (Cal. Ct. App. 1994). Where a plaintiff cannot state a claim under the "borrowed" law, however, he or she cannot state a UCL claim either. *See, e.g.*, *Ingels v. Westwood One Broadcasting Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (Cal. Ct. App. 2005)

("A defendant cannot be liable under [section] 17200 for committing unlawful business practices without having violated another law.") (internal quotation marks omitted).

Insofar as plaintiffs' section 17200 claim is predicated on the alleged section a 2923.5 or TILA disclosure violation, it is preempted (as applied to Onewest and Indymac, at any rate). *See Silvas*, 514 F.3d at 1006 (finding HOLA preempted UCL claim where it was predicated on a TILA disclosure violation). Plaintiffs' more general allegations of "misrepresentations" and "concealment," essentially that defendants intended to hoodwink them into entering and making payments under an unfavorable loan agreement, similarly are insufficient. They fail to advance any factual support for their conclusory claims of fraud and thereby fall short of a showing of any prospect of success on the merits.

G. <u>Breach of the Implied Covenant of Good Faith And Fair Dealing</u>

In their fifth cause of action, plaintiffs argue defendants breached the implied covenant of good faith and fair dealing. This claim is grounded in contract, not in tort law. Section 205 of the Restatement of Contracts states that, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (2009). The California Supreme Court has suggested that "the covenant has both a subjective and an objective aspect—subjective good faith and objective fair dealing. A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable." *Carma Dev., Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992). "[T]he implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Id.*

Defendants point out that the loan agreements themselves outline the possibility of foreclosure should plaintiffs fail to meet their agreed-upon obligations. Plaintiffs are undeniably in default. Defendants correctly, therefore, point out that a court "cannot conclude that a foreclosure conducted in accordance with the terms of a deed of trust constitutes a breach of the implied covenant of good faith and fair dealing." *Id.* at 374-76. While this is true, it does not completely

respond to plaintiffs' theory. They argue not that defendants lack a contractual right to foreclose according to the terms of the loan agreement, but that the various other alleged violations of statutory and common law suggest bad faith and unfairness throughout performance of the contract. The (alleged) secret kickbacks, they contend, could constitute one way in which defendants sought to obtain more from plaintiffs than that to which they were contractually entitled. Plaintiffs also argue that violations of statutes designed to protect parties who, like them, enter into loan agreements might also demonstrate how defendants undermined the contract. Unfortunately, plaintiffs have not presented any evidence of defendants' statutory or common law violations. This claim, then, must also fail as a basis for preliminary injunctive relief.

### H. Fraud: Misrepresentation

Plaintiffs accuse only Alliance of intentional misrepresentation. They argue Alliance misrepresented that "the loan procured was on the best terms available for Plaintiffs, that it was a fixed-rate loan, that it was fully amortized, that the payment would not increase, and that Plaintiffs could afford the loan." (Compl. ¶ 73.) This claim is belied, however, by the Deed of Trust and the accompanying Family Rider, which clearly describe the structure of the loan and the fluctuating interest rate.

### I. Fraud: Concealment

Plaintiffs allege that all defendants concealed material facts, including the fact that plaintiffs "could have obtained a loan on better terms than offered, that the loan was an interest only, negative amortization ARM, that [plaintiffs] could not afford the payments on the loan, and that the loan would be resold and securitized to an unknown third party." (Compl. ¶ 81.) Again, the notion that defendants concealed the structure of the loan is belied by the loan documents. As to their remaining contentions, plaintiffs simply present no facts or other arguments warranting an injunction, preliminary or otherwise.

### J. Civil Conspiracy

A conspiracy is not an independent cause of action, but "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the

No. C 10-00805 RS
ORDER DENYING PRELIMINARY INJUNCTION

immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-11 (1994). Liability for civil conspiracy generally requires three elements: (1) formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy. *Id.* at 511. A civil conspiracy is activated by the commission of an underlying wrongful act. *Id.* It appears that plaintiffs are claiming defendants conspired to violate TILA, RESPA and various other California statutes or common law. As explained above, plaintiffs have not shown colorable claims under any of these statutes; their civil conspiracy claim adds no support to plaintiffs' deficient showing in support of injunctive relief.

## V.   CONCLUSION

A preliminary injunction is an "extraordinary" remedy that is not lightly granted. A moving party must at a most basic level demonstrate some likelihood of success on the merits. Plaintiffs have failed to do so here and their motion for preliminary injunctive relief must therefore be denied.

IT IS SO ORDERED.

Dated: 04/19/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE